# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| David Maiella | : | |
| | : | |
| v. | : | No. 995 C.D. 2024 |
| | : | ARGUED: November 6, 2025 |
| City of New Castle, PA and City of | : | |
| New Castle Police Pension Board, | : | |
| Appellants | : | |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  January 20, 2026**

The City of New Castle, PA, and City of New Castle Police Pension Board appeal from the July 5, 2023 and July 3, 2024 orders of the Court of Common Pleas of Lawrence County.  In the July 5, 2023 order, the trial court concluded that David Maiella's December 2, 2022 appeal from the Board's March 9, 2022 denial of his June 16, 2021 claim for a disability retirement benefit under the Police Pension Plan was timely filed and that he was entitled to proceed with a statutory appeal on the merits of the Board's decision to deny his claim.  In the July 3, 2024 order, the trial court reversed the Board's denial of Maiella's claim.  To the extent that Maiella's appeal should have been considered timely filed, we affirm the trial court's July 5, 2023 order.  However, we vacate the July 3, 2024 order, and remand to the trial court in accordance with the opinion set forth below.

As set forth by the trial court, the pertinent background of this matter is as follows.[1]  Between April 2009 and June 2021, the City employed Maiella as a police officer.  On May 6, 2019, Maiella suffered a back injury that caused him to be placed on leave and to receive benefits under what is frequently referred to as the Heart and Lung Act[2] until his June 16, 2021 separation from employment.  Shortly thereafter, the City and Maiella executed an "Agreement Incident to Separation from Employment and Resolution of Heart & Lung Act Benefits."  7/30/2021 Agreement at 1-11; Reproduced Record (R.R.) at 93a-103a.  As part of the Agreement, Maiella was permitted to apply for a disability retirement benefit pursuant to Section 169.05 of the Plan.  *Id*. at 2; R.R. at 94a.

In June 2021, Maiella submitted a claim to the Board in accordance with Section 169.05 of the Plan.  6/16/2021 Claim at 1-2; R.R. at 125a-26a. Disability reports were submitted from Dr. Adam Stubert, M.D., Dr. Richard Liedke, M.D., and Dr. Steven Hand, D.O., with dates ranging from July 2021 to November 2021.  The Board denied Maiella's claim without holding a hearing, relying upon the reports.  3/09/2022 Denial at 1-2; R.R. at 1070a-72a.

Instead of filing an appeal under Section 169.09(g) of the Plan, which affords a 90-day appeal period, Maiella filed a grievance under the parties' collective bargaining agreement (CBA).  In the grievance, he stated:

> In electing to pursue this grievance remedy, [Maiella]
> notes that in the event that this grievance should, for
> whatever reason, result in an arbitrability determination by
> an arbitrator precluding arbitration of this matter under the

---

[1] The trial court in its July 2023 opinion relied upon the parties' stipulation of facts.  5/30/2023 Stipulation of Facts (S.O.F.) at 1-5; Reproduced Record (R.R.) at 17a-21a.

[2] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-38.

2

parties' CBA and Act 111,[3] [Maiella] *preserves, and does not waive, his/their rights under the City Code and . . . Plan, including appeal at Pension Section 169.09(g), Administration Appeal Procedure, to at that time appeal denial of the pension via Pension appeal procedure at Section 169.9.*

3/22/2022 Grievance at 1-12; R.R. at 597a-608a (footnote added) (emphasis added).

Following the arbitrator's November 2022 decision that a dispute over the denial of a disability pension was not substantively arbitrable under the CBA, Maiella submitted a December 2022 appeal under Section 169.09(g) of the Plan for the Board's review of its March 2022 denial of his claim for a disability retirement benefit. The City issued a resolution denying Maiella's December 2022 submission as untimely under the Plan. 1/06/2023 Resolution at 1; R.R. at 172a.

In January 2023, Maiella filed a statutory appeal with the trial court. The trial court determined that his appeal from the Board's denial of his claim was timely and that, accordingly, he was entitled to proceed with a statutory appeal on the merits of the Board's denial.

In resolving Maiella's statutory appeal, the trial court directed the City to select an alternate orthopedic physician to evaluate Maiella and generate a report. Subsequently, the trial court considered a new examination and disability report from Dr. James Gardner, III, who opined that Maiella was not suffering from a back injury but was unable to perform his duties as a police officer due to a declining/deteriorating overall physical condition. Accordingly, the trial court reversed the Board's denial of his claim. The City's appeal of the trial court's July 2023 and July 2024 orders followed.

---

[3] The Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended*, 43 §§ P.S. 217.1-217.12.

The City presents three issues for review: 1) whether the trial court erred in determining that Maiella timely appealed the denial of his claim; 2) whether the trial court erred in determining that Maiella could file an actionable appeal with the Board after he elected to pursue the grievance procedure in the parties' CBA; and 3) whether the trial court erred in ruling on the merits of Maiella's alleged disability.

The City's first and second issues amount to the same claim because it is undisputed that Maiella's December 2022 appeal from the Board's March 2022 denial was untimely under the terms of the pension plan.[4] The question is whether Maiella's assertion in his grievance to the effect that, if he lost in arbitration, he could still avail himself of an appeal under Section 169.09(g) of the Plan, was sufficient to toll the 60-day deadline and/or whether the City is estopped from asserting the waiver provision found in Section 169.09(g)(5) of the Plan. Accordingly, we combine the first and second issues for consideration.

---

[4] The trial court concluded that Maiella's appeal was "timely," reasoning that it was clear from the claim, sent to both the City and the Board, that both entities were fully aware of Maiella's "pending" claim for benefits; that it was reasonable for him to argue that the issue of a disability retirement benefit could be determined from the CBA; and that he immediately renewed his claim with the Board following the arbitrator's decision. Given our disposition that the Board is essentially estopped from raising an issue as to the alleged untimeliness of Maiella's appeal, we essentially agree with the trial court's rationale.

However, we note our disagreement with the trial court's statement that Maiella had a choice of forum for a challenge to the pension denial due to the parties' stipulation that he had an election of remedies under law regarding the forum for such a challenge. If there was no jurisdiction for grievance of the issue under the CBA, then Maiella cannot be charged with an election of remedies where there was, in fact, only one available remedy as a matter of law. The parties' stipulation is of no moment, as parties cannot stipulate to a conclusion of law, which is the sole province of the courts.

4

## I.

The Plan sets forth a detailed appeal procedure, including time limitations and the consequences for not meeting them. In pertinent part, Section 169.09(g) of the Plan provides: "Any person whose application for retirement benefits is denied . . . *shall first seek a resolution of such claim under the procedure hereinafter set forth*." Plan, § 169.09(g); R.R. at 44a (emphasis added). Section 169.09(g)(3) provides:

> Upon receipt of Notice denying the claim, the Claimant shall have the right to request a full and fair review by the Council of the initial determination. Such request for review must be made by Notice to the Council within sixty (60) days of receipt of such Notice of denial.

*Id*. Section 169.09(g)(5) provides: "A Claimant who does not submit a Notice of a claim or a Notice requesting a review of a denial of a claim within the time limitations specified above *shall be deemed to have waived* such claim or right to review." *Id*. (emphasis added).

As noted, Maiella filed a March 2022 grievance stating that if the grievance resulted in an arbitrability determination precluding arbitration, he was preserving and not waiving any rights under the Plan, including an appeal under Section 169.09(g). No provision in the Plan allows a claimant to stop the clock.[5] Here, however, the City in its April 2022 letter responded to the grievance by

---

[5] However, even though there is no provision in the Plan affording a claimant the power to extend a time period, there is at least one provision that permits the Plan Administrator to do so. Section 169.09(g)(2) of the Plan allows the Plan Administrator to extend the 90 days in which it has to mail a claim denial to a claimant for an additional 90 days "if special circumstances so require." Plan, § 169.09(g)(2); R.R. at 44a. At all ends, the fact that a time period may be extended is indicative of the fact that time limitations in the Plan are not jurisdictional. In addition, the possibility for extension within the four corners of the Plan indicates that the Plan Administrator has the power to extend at least one time limitation under special circumstances.

objecting to arbitration but not to Maiella's reservation of his rights under the Plan. The pertinent paragraphs of the letter provide:

> As an initial matter, the City objects to the submission of this dispute to either the contractual grievance procedure or to grievance arbitration. Article XI of the current [CBA] . . . provides for the adjustment of grievances in the event that "any difference [should] arise between the City and any Police Officer involving the interpretation, application or enforcement of any terms of [the] [CBA]." This dispute concerns the denial of an application for a disability pension under the terms of the . . . Plan . . . . The [CBA] does not contain any reference to the disability pension, and the . . . Plan is not specifically incorporated into the [CBA].
>
> . . . .
>
> The City therefore objects to the submission of this dispute to the grievance procedure as not involving an interpretation, application, or enforcement of the terms of the [CBA], and plans to raise this arbitrability objection at grievance arbitration. Pursuant to Section 169.09(g) of the . . . Plan, a person whose application for retirement benefits is denied "shall first seek a resolution of such claim" under the Plan's appeal procedures, beginning with the filing of a Notice of Claim with the Plan Administrator. As of this date, it is my understanding that no such appeal has been filed.

4/12/2022 Letter at 1; R.R. at 609a.

By objecting to Maiella's use of the grievance process but not to his reservation of rights under the Plan, the City tacitly accepted that he was putting the procedure under the Plan on hold pending the outcome of the arbitration thereby lulling him into a false sense of security. Given the fact that the City led Maiella into believing that he could pursue the grievance process with impunity and reserve his rights under the Plan, we conclude that the City's January 2023 resolution

6

denying his December 2022 purported appeal as untimely under the Plan was in error. Accordingly, the trial court correctly determined that Maiella could pursue an actionable appeal under the Plan despite not meeting the 60-day appeal deadline set forth in Section 169.09(g)(3).

## II.

We turn now to determining whether the trial court erred in ruling on the merits of Maiella's appeal of the denial of his claim for a disability retirement benefit and concluding that Maiella was disabled per the Plan. Although the trial court held that Maiella's appeal from the Board's denial of his claim was timely, it did not remand the matter to the Board to consider his appeal under Section 169.09(g) of the Plan's appeal procedure. Instead, the trial court made a *de novo* determination that Maiella met his burden of proving eligibility for a disability retirement benefit and reversed the Board's denial of his claim.

We emphasize that we do not find error in the trial court's analysis of the merits; indeed we do not address that question at all. Rather, we hold simply that the trial court erred in ruling on the merits rather than remanding the appeal to the Board for disposition under the Plan.[6]

---

[6] Maiella acknowledged in the Agreement that the appropriate forum to obtain a disability retirement benefit was under the Plan. The Agreement specified:

> Maiella agrees to voluntarily separate from his employment with the City effective as of June 16, 2021. The parties agree that upon his separation, [he] may apply for a disability retirement benefit under the terms of the . . . Plan at Section 169.05 and any other relevant provision of the . . . Plan. The City does not in any way provide assurance to or guarantee . . . Maiella that he will be determined to be eligible for a disability retirement benefit; rather, any determination of eligibility . . . shall be determined by the Plan Administrator upon presentation of proof of Total and Permanent Disability, as determined by the . . . Plan. Such proof shall consist

**(Footnote continued on next page…)**

7

The relevant provisions of the Plan include Section 169.05(d), the verification of disability provision, which provides:

> The Plan Administrator shall determine whether a Participant shall have incurred a Total and Permanent Disability. Proof of Total and Permanent Disability shall consist of the sworn statement of three (3) practicing physicians, designated by the Plan Administrator, that the Participant has incurred a Total and Permanent Disability.

Plan, § 169.05(d); R.R. at 35a.

> Section 169.01 of the Plan defines "Total and Permanent Disability" as
>
> a condition of physical or mental impairment due to which a Participant is unable to perform any duties of Employment with the Employer. The Plan Administrator shall determine whether a Participant has incurred a total and permanent disability based upon the results of an examination by three (3) physicians approved by the Plan Administrator.

Plan, § 169.01; R.R. at 28a.

As noted, Section 169.09(g) of the Plan sets forth the appeal procedure for "[a]ny person whose application for retirement benefits is denied, who questions the amount of benefit paid, who believes a benefit should have commenced which did not so commence or who has some other claim arising under the Plan[.]" Plan, § 169.09(g); R.R. at 44a. In pertinent part, Section 169.09(g)(3) provides:

---

of the sworn statement of three practicing physicians (two of whom will be designated by the Plan Administrator and one of whom may be chosen by . . . Maiella) that [he] has incurred a Total and Permanent Disability as defined in the . . . Plan. The parties further agree that all other terms of the . . . Plan shall apply to any determination of [his] rights thereunder.

7/30/2021 Agreement at 2; R.R. at 94a.

8

> Upon receipt of Notice denying the claim, the Claimant shall have the right to request a full and fair review by the Council of the initial determination. . . . During such review, the Claimant or a duly authorized representative shall have the right to review any pertinent documents and to submit any issues or comments in writing. The Council shall, within sixty (60) days after receipt of the Notice requesting such review, (or in special circumstances, such as where the Council in its sole discretion holds a hearing, within one hundred and twenty (120) days of receipt of such Notice), submit its decision in writing to the person or persons whose claim has been denied. The decision shall be final, conclusive and binding on all parties, shall be written in a manner, calculated to be understood by the Claimant and shall contain specific references to the pertinent Plan provisions on which the decision is based.

Plan, § 169.09(g)(3); R.R. at 44a.

Here, because the City by resolution determined that Maiella's appeal of the Board's denial of his claim was untimely, it did not conduct a full and fair review of the initial determination in accordance with Section 169.09(g)(3) of the Plan. Accordingly, to the extent that Maiella's appeal should have been considered timely filed, we affirm the trial court's July 5, 2023 order. However, we vacate the trial court's July 3, 2024 order and remand to the trial court with directions to further remand to the Board to hold a hearing on Maiella's appeal of the denial of his claim for a disability retirement benefit within 90 days of the date of this opinion and order.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Maiella
      v.

City of New Castle, PA and City of
New Castle Police Pension Board,
          Appellants

:
:
: No. 995 C.D. 2024
:
:
:
:

## O R D E R

AND NOW, this 20th day of January, 2026, the July 5, 2023 order of the Court of Common Pleas of Lawrence County is hereby AFFIRMED to the extent that David Maiella's appeal of the denial of his claim for a disability retirement benefit under the Police Pension Plan should have been considered timely filed.

The July 3, 2024 order is hereby VACATED. This matter is REMANDED to the trial court with directions to remand to the City of New Castle Police Pension Board to hold a hearing on Maiella's appeal of the denial of his claim for a disability retirement benefit within ninety (90) days of the date of this opinion and order.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita